```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                   EASTERN DISTRICT OF OKLAHOMA
```

LISA M. COXSEY,                )
                               )
            Plaintiff,         )
                               )
v.                             )    Case No. CIV-07-016-RAW
                               )
MICHAEL J. ASTRUE,             )
Commissioner of Social         )
Security Administration,       )
                               )
            Defendant.         )

## REPORT AND RECOMMENDATION

Plaintiff Lisa M. Coxsey ("Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on July 29, 1965 and was 39 years old at the time of the ALJ's latest decision. Claimant completed her high school education and a four year college degree in nursing. Claimant has worked in the past as a registered nurse, licensed practical nurse and nurses' aide. Claimant alleges an inability to work beginning May 25, 2001, due to fibromyalgia and depression.

### Procedural History

On December 2, 2002, Claimant filed for disability insurance benefits and Supplemental Security Income under Title II (42 U.S.C. § 401, *et seq*.) and Title XVI of the Social Security Act (42 U.S.C.

§ 1381, *et seq.*). By decision dated April 21, 2003, the ALJ found that Claimant was not disabled and, therefore, not entitled to benefits. The Appeals Council subsequently denied review of the ALJ's findings. After Claimant appealed the decision, this Court reversed the ALJ's decision and remanded the case for further proceedings by Order entered January 8, 2004. The Appeals Council vacated the ALJ's decision and remanded the case.

After a supplemental hearing on June 3, 2004, the same ALJ, Michael Kirkpatrick, determined by decision dated August 16, 2004 that Claimant was once again not entitled to benefits. On November 15, 2006, the Appeals Council denied review of the ALJ's decision. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing and retained the residual functional capacity ("RFC") to perform a limited range of light work existing in a significant number of jobs in the national economy.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) demonstrating bias and a predisposition toward denying benefits to Claimant; (2)

4

failing to provide specific and legitimate reasons for rejecting the opinions of Claimant's treating physician as previously ordered by this Court; and (3) failing to pose specific, precise questions to the vocational expert as ordered by this Court in the prior remand. This Court will first address the substantive bases for reversal.

**Evaluation of the Opinions of Claimant's Treating Physician**

Claimant contends the ALJ failed on remand to properly evaluate the opinions of Claimant's treating physician, Dr. Stanley Cohen, a rheumatologist. Claimant first received treatment for her fibromyalgia in October of 2000 while she was working as a registered nurse. (Tr. 126-127, 137-138). In a medical visit in December of 2000, Claimant reported "overall feeling much better." (Tr. 134).

Claimant first presented to Dr. Stanley B. Cohen on August 17, 2001 on referral. He noted Claimant's past medical history of depression, peptic ulcer disease, and chronic headaches. He also acknowledged that Claimant was on short term disability due to recent stress fractures in both feet. (Tr. 200). Claimant denied weight loss, fever, rashes, photosensitivity, palm, sole or vaginal rashes, mouth, nose or vaginal sores or ulcers, dryness of the eyes and mouth, redness or burning of the eyes, muscle weakness or tenderness, Raynaud's, insomnia, dysphagia, nausea, vomiting, diarrhea or blood or mucus in the stools, GI pain, GI ulcers,

5

shortness of breath, chest pain, cough, palpitations, dysuria, discharge, numbness or tingling or other CNS manifestations of disease. Id. Dr. Cohen noted in his impressions that he believed Claimant suffered from fibromyalgia, but intended to do exclusionary laboratory work to eliminate the possibility of other causes for her complaints. He switched her medications to Flexeril and Prozac. He also stated that he would attempt to get her into a fibromyalgia program. At that time, Dr. Cohen stated in his report that Claimant would return to work as a registered nurse on a part time basis, working two or three shifts per week. Id.

Claimant returned to Dr. Cohen on October 19, 2001. Claimant again denied weight loss, fever, alopecia, rashes, photosensitivity, palm, sole or vaginal rashes, mouth, nose or vaginal sores or ulcers, dryness of the eyes and mouth, redness or burning of the eyes, muscle weakness or tenderness, Raynaud's, insomnia, dysphagia, nausea, vomiting, diarrhea or blood or mucus in the stools, GI pain, GI ulcers, shortness of breath, chest pain, cough, palpitations, dysuria, discharge, numbness or tingling or other CNS manifestations of disease. Claimant continued to report chronic pain syndrome and was not able to return to work. Claimant stated that her depression had worsened and that she was having difficulty coping with the chronic pain and fatigue. Dr. Cohen proposed sending Claimant to a facility for a stretching and strengthening program, but that Claimant probably could not

complete the program due to financial concerns. He also stated his belief that Claimant was in need of counseling in order to cope with her depression. (Tr. 199).

Claimant next reported to Dr. Cohen on December 19, 2001. Once again, Claimant denied weight loss, fever, rashes, photosensitivity, palm, sole or vaginal rashes, mount, nose or vaginal sores or ulcers, dryness of the eyes and mouth, redness or burning of the eyes, muscle weakness or tenderness, Raynaud's, insomnia, dysphagia, nausea, vomiting, diarrhea or blood or mucus in the stools, GI pain, GI ulcers, shortness of breath, chest pain, cough, palpitations, dysuria, discharge, numbness or tingling or other CNS manifestations of disease. Claimant did not report for the exercise program as directed by Dr. Cohen. Claimant did not return to work and continued her pursuit of disability benefits from her employer. Dr. Cohen noted "until this patient takes the responsibility for her problems, she will not be any better" and the he had "little to offer her from a medical standpoint." If disability benefits were granted, Dr. Cohen advised Claimant to enter a fibromyalgia program. (Tr. 198).

In a March 27, 2002 visit to Dr. Cohen, Claimant reported that she had been denied disability benefits. Claimant denied weight loss, fever, rashes, photosensitivity, palm, sole or vaginal rashes, mount, nose or vaginal sores or ulcers, dryness of the eyes and mouth, redness or burning of the eyes, muscle weakness or

7

tenderness, Raynaud's, insomnia, dysphagia, nausea, vomiting, diarrhea or blood or mucus in the stools, GI pain, GI ulcers, shortness of breath, chest pain, cough, palpitations, dysuria, discharge, numbness or tingling or other CNS manifestations of disease. Dr. Cohen found Claimant's condition to be unchanged and anticipated that it would remain so until Claimant could enter a proper fibromyalgia program. Claimant also reported that she intended to see a psychiatrist. (Tr. 196).

Dr. Cohen wrote a letter concerning Claimant's condition after the March 27, 2002 visit. He stated Claimant "cannot perform in the material and substantial duties of a nurse, her regular occupation due to her sickness and diagnosis of fibromyalgia." He states Claimant has tenderness in 18 of 18 tender points, cannot lift weight greater than 10 pounds, and has limited ability to bend or squat. Dr. Cohen sets forth that Claimant has daily headaches, chronic sleep disturbance, frequent vertigo, memory dysfunction, chronic fatigue, and loss of concentration. (Tr. 195).

Claimant saw Dorothy J. Phelps, a licensed professional counselor on March 4, 2002. Her diagnosis of Claimant's mental and emotional condition was Axis I: Mood Disorder due to Fibromyalgia with Depressive Features with a history of Axis I, Major Depression, Single Episode, with Psychotic Features, currently in remission. (Tr. 194).

On January 7, 2002, Claimant was attended by Dr. James Miller,

a rheumatologist. Claimant saw Dr. Miller because he was closer to her home. He prescribed amitriptyline (Elavil) "as this works." (Tr. 181).

On September 11, 2002, Dr. Cohen completed a Fibromyalgia Medical Evaluation Form. He noted Claimant met the American Rheumatological criteria for fibromyalgia, that she also suffered from depression, and that her prognosis was "fair." He found Claimant would suffer from fibromyalgia for at least 12 months. Her identified symptoms were multiple tender points, non-restorative sleep, chronic fatigue, morning stiffness, subjective swelling, irritable bowel syndrome, numbness and tingling, anxiety, incoordination, chronic fatigue syndrome, and multiple trigger points. (Tr. 258-259). The location of Claimant's pain is identified by Dr. Cohen as the cervical and thoracic spine and chest, shoulders, arms, hips, legs, and feet. The extent of the pain is stated as "chronic/daily." (Tr. 259).

Dr. Cohen did not believe Claimant to be a malingerer. He found Claimant's impairments to be consistent with her symptoms and functional limitations. Dr. Cohen reported Claimant's pain was frequently sufficiently severe to interfere with attention and concentration and that she had a marked limitation in her ability to deal with work stress. (Tr. 260).

Dr. Cohen estimated Claimant could walk less than one block without rest or severe pain. He estimated Claimant could sit,

stand, and walk less than two hours. (Tr. 261).

Dr. Cohen reported Claimant must be able to shift positions at will from sitting, standing or walking, and could occasionally lift less than 10 pounds. He stated Claimant had significant limitations in reaching. He also estimated the percentage of the workday where Claimant could use her hands to grasp, turn or twist objects at 10% for each hand and fine manipulation at 10% for each hand. Dr. Cohen stated Claimant could occasionally bend and twist at the waist. He estimated Claimant would be absent from work as a result of her condition more than three times per month. (Tr. 262-264). He sets forth on the form that Claimant suffers from headaches, morning stiffness, shortness of breath, leg cramps, muscle twitching, problems climbing stairs, handwriting difficulties, motor coordination problems, irritability, migraines, weakness, dizziness, nausea, sciatica, anxiety, sleep deprivation, fatigue, and mood swings. He also noted a sensitivity to cold, light and humidity. (Tr. 264).

Dorothy Phelps, LPC, also wrote a letter on March 4, 2002 which essentially reflected her diagnosis of Claimant. She also related problems which had arisen in the family as a result of Claimant's daughter, who was experiencing psychotic episodes. (Tr. 193-194).

On April 22, 2002, Claimant was seen by Dr. Mohammed Quadeer, an agency physician who examined Claimant. He found Claimant to be

"well developed and well nourished and in no apparent distress. Pt. is able to get on and off the exam table with ease and without assistance." (Tr. 212). His assessment concluded Claimant suffered from "[b]ody wide aches and pains, probably due to fibromyalgia, Depression, not under control with treatment, and Limited movement of both hip joints. (Tr. 213). The only restriction on Claimant's movement was in her hip flexion, which was rated on both sides at 80 out of 100, hip abduction, rated at 30 out of 40, hip internal rotation, rated at 80 out of 100, and hip external rotation, rated at 80 out of 100. (Tr. 214).

On April 23, 2002, Claimant was evaluated by Dr. C. Robin McGirk, a licensed psychologist. Dr. McGirk's diagnosis was Axis I: Provisional, Posttraumatic Stress Disorder, Major Depression without psychotic features; Axis II: Deferred; Axis III: See Physician's Report; Axis IV: Stressors-Social isolation, financial hardship, health problems-Severe; Axis V: GAF-Past year-55, GAF-Present-55. (Tr. 221).

On May 1, 2002, Dr. Stephen J. Miller completed a Psychiatric Review Technique form on Claimant. He noted a depressive disorder and PTSD, characterized by anhedonia or pervasive loss of interest in almost all activities, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, and hallucinations, delusions or paranoid thinking. (Tr. 223). Dr. Miller found mild restrictions on activities of daily living and

11

difficulties in maintaining social functioning with moderate functional limitations in maintaining concentration, persistence, or pace. (Tr. 235). A Functional Capacity Assessment form completed by Dr. Miller showed moderate limitation upon Claimant's ability to understand and remember detailed instructions and ability to carry out detailed instructions. All other areas showed no significant limitation. (Tr. 251).

Claimant was also seen by Dr. William Mitchell, a Providence of Oklahoma physician. He managed Claimant's depression and fibromyalgia with medication. He also noted a flair up of Claimant's fibromyalgia in October of 2002. (Tr. 266-268). By letter dated June 17, 2004, Dr. Mitchell offered the opinion that Claimant "is unable to be employed due to constant joint pain, fatigue, sleep disturbance, and frequent problems with ambulation. The prognosis of this disease is poor to guarded with an expected increase in pain and mobility problems." (Tr. 335).

In his second decision, the ALJ sets forth the medical records he evaluated, including those detailed above. Considering the matter was remanded specifically for consideration of the opinions of Dr. Cohen as Claimant's treating physician, a good deal of the ALJ's opinion centers on the reliability of Dr. Cohen's as well as Dr. Mitchell's conclusions. He specifically states that if these physicians' assessments are accepted "at face value," a finding of disability would be compelled. The ALJ concluded, however, that

12

the opinions were not supported by medically acceptable clinical and diagnostic techniques, are not consistent with other substantial medical and non-medical evidence of record and challenges Dr. Mitchell as a treating physician. (Tr. 291). The ALJ, therefore, did not give controlling weight to these physicians' opinions.

The ALJ noted that Dr. Cohen prepared the September 2002 report "at the request of the claimant and her Social Security attorney." He finds the report lacks objective medical findings and the results of diagnostic tests that were obtained were negative. The ALJ also notes Dr. Cohen released Claimant to part time work in August of 2001 and that nothing had changed in Claimant's condition between that time and the issuance of the September 2002 letter. (Tr. 292). The ALJ also found that Dr. Cohen is the only physician, with the exception of Dr. Mitchell, who is "willing to step forward to pronounce claimant disabled." He also states Dr. Cohen "appears to be inclined to advocate for disability benefits for claimant." He also finds Dr. Cohen saw Claimant "on a few occasions" before rendering his pessimistic diagnosis. The ALJ notes Dr. Cohen's unhappiness with Claimant's "continued passiveness regarding her fibromyalgia." (Tr. 292-293).

With regard to Dr. Mitchell, the ALJ notes "he has failed to detail any treatment relationship with claimant" and "it is unclear whether Dr. Mitchell has ever seen the claimant as a patient."

13

(Tr. 293).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support

or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ apparently once again gave no weight to Dr. Cohen's opinion without specifically identifying any evidence in the record to contradict it. Indeed, the ALJ does not give any deference to Dr. Cohen's conclusions. Many comments in the ALJ's decision trouble this Court. His statements that the September 2002 report was prepared at the request of Claimant and his attorney and opinion that Dr. Cohen is an advocate for disability benefits smack of the old "treating physician's report appears to have been prepared as an accommodation to a patient" statement that has been roundly rejected as a basis for reducing the controlling weight normally afforded a treating physician's opinion. Miller v. Chater, 99 F.3d. 972, 976 (10th Cir. 1996) citing Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987).

15

Additionally, the ALJ makes the superfluous and rather curious statement that Dr. Cohen is the only physician willing to "step forward" and pronounce Claimant disabled. This might be explained by Dr. Cohen's status as Claimant's primary treating physician. Claimant sought care from few other physicians on a consistent basis. While it might be desirable for Dr. Cohen to have provided more diagnostic test results with his assessment, the nature of Claimant's condition necessarily precludes extensive objective testing. On remand, the ALJ should either direct further testing before rejecting Dr. Cohen's opinion out of hand or obtain further information from Dr. Cohen himself.

With regard to Dr. Mitchell, it is unclear whether Claimant is asserting any impropriety with the ALJ's opinion on this physician's conclusions. It is apparent, however, that the ALJ rejected Dr. Mitchell as a treating physician when it appears he attended Claimant and prescribed medication. (Tr. 266-268). The ALJ, on remand, shall explain his rejection of Dr. Mitchell as a treating physician in light of the treatment records.

## Vocational Expert

A vocational expert's testimony can provide a proper basis for an ALJ's determination where the claimant's impairments are reflected adequately in the hypothetical inquiries to the expert. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993). The ALJ is required to accept and include in the hypothetical question only

16

those limitations supported by the record. Shepherd v. Apfel, 184 F.3d 1196, 1203 (10th Cir. 1999). In this case, the ALJ failed to include Claimant's mental impairments and moderate limitations on maintaining concentration, persistence or pace in his inquiry to the VE, requiring reversal.

**Bias of the ALJ**

Claimant exerts considerable energy in her briefing on comments made by the ALJ during the administrative hearing which arguably telegraphed a decision against a finding of disability. Specifically, the ALJ stated:

> This is, this is mind boggling to me. This is – I don't even see a closed (sic) case. It's mind boggling to me that this went up on Appeal and got remanded. I'm going to write a better decision this time and if there's new stuff in the medical evidence I'll decide in your favor if it shows that. I don't see any evidence whatsoever that would indicate that you're a disabled person. And that fact that you would think that you are is the thing that just blows my mind. I do 70 to 100 of these hearings a month, I probably decide more favorable cases than any other Judge in our system, and I don't even see this as being a closed (sic) case. You sit there and calmly describe I'm in excruciating pain, I can't do anything. I lay in bed all day. Is that your testimony?

(Tr. 393-394).

While statements such as these are certainly ill-advised, this Court is not willing to reverse the case on the basis of the bias alone – and it is unnecessary given the errors in the ALJ's decision. This Court is concerned, however, that this or any ALJ would seemingly predispose of a case while leaving the record open for the submission by a claimant of further medical support. Such

17

conduct could border on a constitutional deprivation of due process and should be avoided in the future.

Claimant also states the ALJ's second decision is tailor made to avoid reversal by altering some of the findings made in the first decision. Changing the prior decision is not prohibited and is not grounds for reversal.

This Court would be remiss if it did not also point out troubling conduct by Claimant's counsel. Claimant's briefing lacks significant references to the medical record such that this Court – a different judge than viewed the record in the first appeal – could follow the medical evidence Claimant believed to be relevant to this appeal. In the future, deficient briefing will be rejected and new briefing with adequate references to the record will be ordered in such instances.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and REMANDED** for further proceedings.

The parties are herewith given ten (10) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure

18

to object to the Report and Recommendation within ten (10) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 24th day of March, 2008.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE